UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

OSCAR DE LA RENTA, LTD.,

               Plaintiff,

       -against-

MULBERRY THAI SILKS, INC.
d/b/a MULBERRY NECKWEAR,

             Defendant.

------------------------------------------------x

**08 CIV 4341**

Civ. No.

JUDGE SULLIVAN

JURY DEMANDED



## COMPLAINT

Plaintiff Oscar de la Renta, Ltd., by its undersigned attorneys, Tashjian & Padian, as and for its Complaint herein, alleges as follows:

### JURISDICTION AND VENUE

1.    This is an action for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 et seq., for federal unfair competition and for common law unfair competition and breach of contract in violation of the laws of the United States of America and the State of New York.

2.    This Court has jurisdiction of this action pursuant to the Lanham Act, 15 U.S.C. §§ 1121 and 1125(a), 28 U.S.C. §§ 1331, 1338, 1367 and principles of supplemental jurisdiction.

3.    Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c) in that one of the defendants resides in this judicial district and a substantial part of the events or omissions giving rise to the clams asserted herein occurred in this judicial district.

## THE PARTIES

4.    Plaintiff Oscar de la Renta, Ltd. ("ODLR, Ltd.") is a corporation organized and existing under the laws of the State of New York, having its principal place of business located at 550 Seventh Avenue, New York, New York 10018.

5.    Upon information and belief, defendant Mulberry Thai Silks, Inc., d/b/a Mulberry Neckwear ("Mulberry") is a corporation organized and existing under the laws of California, having a principal place of business located at 880 Harbour Way South, Richmond, California 94804.  Upon information and belief, Mulberry is licensed to do business in the State of New York and maintains a show room in New York located at 156 East 36th Street, New York, New York 10016.

## FACTUAL ALLEGATIONS

6.    For over forty years prior to the acts of defendants complained of herein, ODLR, Ltd. and its predecessors and affiliates have been in the business of designing original, unique and proprietary womens and mens clothing, accessories and related items.  Such clothing, accessories and related items bearing plaintiff's tradenames and trademarks are sold under license by plaintiff throughout the United States and the world, including specifically in this judicial district.   These tradenames and trademarks have been used by plaintiff in interstate commerce to identify its goods and services and to distinguish them from goods and services provided by others.

7.    Plaintiff has adopted, registered and used in interstate commerce the marks, names and styles "Oscar de la Renta," and "O Oscar an Oscar de la Renta Company," *inter alia.*

8.      By reason of long and extensive sales of its high quality merchandise, and the advertising and marketing of that merchandise, plaintiff's aforesaid tradenames and marks are widely known and respected by their identification with plaintiff as the source of high quality goods, and said tradenames and marks have developed and now have a secondary and distinctive meaning to manufacturers, retailers and others in the trade of women's and men's clothing, accessories and related items, as well as consumers, who have come to identify plaintiff as the source of products associated with plaintiff's tradenames and trademarks.

9.      Long prior to the commencement of this action, plaintiff applied for and received Certificates of Trademark Registration for these trademarks. These trademarks are used and published in the United States with proper form of trademark notice in the name of the plaintiff.

10.     Plaintiff has duly received from the United States Patent and Trademark Office Certificates of Registrations for these trademarks:  (i) registration number 1334456 dated May 7, 1985; (ii) registration number 2119455 dated December 9, 1997; (iii) registration number 2132134 dated January 27, 1998; (iv) registration number 3307716 dated October 9, 2007; (v) registration number 3303388 dated October 2, 2007 (the "O Oscar Mark"); and (vi) registration number 3283357 dated August 21, 2007 (collectively, the "Marks"). True copies of each Certificate are annexed hereto at Exhibit A.

11.    As reflected in the annexed Certificates of Trademark Registration, plaintiff's rights in the Marks extend to various items of clothing, sporting goods, jewelry and other merchandise, including men's ties.

12.    All of the aforesaid registrations are valid and subsisting, and were valid and subsisting at all times affecting the matters complained of herein, and constitute prima facie or conclusive evidence of plaintiff's exclusive right to use these registered marks in commerce in connection with the specified services and activities.

13.    At all times since the registration of the Marks, plaintiff has been and still is the sole owner and proprietor of all right, title and interest in and to the Marks.

The License Agreement

14.    On or about April 16, 2007 plaintiff and defendant Mulberry entered into a License Agreement (the "License Agreement") pursuant to which plaintiff granted to defendant Mulberry an exclusive, non-assignable license allowing defendant Mulberry to use plaintiff's O Oscar Mark as directed and approved by ODLR, Ltd. in connection with the manufacture and sale of Articles, as that term was defined in Section 1(c) of the License Agreement to be men's neckties. As per Section 12.1.1 of the License Agreement, defendant Mulberry acknowledged that ODLR, Ltd. is the owner of the O Oscar Mark.

15.    The License Agreement was to be for an initial term of five contract years, commencing upon execution and terminating on December 31, 2012.

16.    In consideration for the license granted, defendant Mulberry was obligated under Section 8 of the License Agreement to pay plaintiff royalties at a rate equal to eight

(8%) percent of Net Sales of the Articles and four (4%) percent of Net Sales of Close-Out

Articles (as those capitalized terms are defined in the License Agreement.)

17.    As part of its royalty payment obligation to ODLR, Ltd., Section 8.2 of the

License Agreement required defendant Mulberry to pay ODLR, Ltd. a minimum of

$125,000 for the First Contract Year (beginning upon the execution of the License

Agreement and ending on December 31, 2008). This amount was to be paid as follows:

$62,500 upon execution of the License Agreement and the balance in equal installments

of $15,625 due on or before each of the Quarterly Dates of October 1, 2007, January 1,

2008, April 1, 2008 and July 1, 2008.

18.    The minimum royalty payment obligations for the rest of the initial Term,

as set forth in Section 8.2 of the License Agreement, was as follows: $175,000 for the

Second Contract Year (beginning effective January 1, 2009 and ending December 31,

2009); $225,000 for the Third Contract Year (beginning effective January 1, 2010 and

ending December 31, 2010); $275,000 for the Fourth Contract Year (beginning effective

January 1, 2011 and ending December 31, 2011) and $325,000 for the Fifth Contract

Year (beginning effective January 1, 2012 and ending December 31, 2012).  The

minimum royalty payment obligations were required to be paid quarterly.

19.    Sections 2.1 and 13.3 of the License Agreement also prohibited Mulberry

from transferring the License Agreement to a third party. Specifically, Section 2.1 states

that defendant Mulberry was being granted an "exclusive non-assignable license" and

Section 13.3.1 states that the License Agreement "may not be assigned, sold or

transferred voluntarily or by operation of law." Section 13.3.1 further states that in the

5

event of an assignment, ODLR, Ltd. shall have the "option to terminate the Agreement effective upon notice."

20.    In or about late Winter/Spring 2008 Mulberry communicated to ODLR, Ltd. that it, Mulberry, was going to be acquired by Phillips Van Heusen Inc. ("PVH"), and that the acquisition was going to go forward irrespective of the consequences under the License Agreement.

21.    By letter dated April 4, 2008 (the "First Notice of Default"), ODLR, Ltd. advised defendant Mulberry that Mulberry's statements concerning its acquisition by PVH constituted a material breach and default of the License Agreement, and that ODLR, Ltd. was thereby exercising its right to terminate the License Agreement, such termination to be effective in thirty (30) days.

22.    Subsequent to sending the First Notice of Default, ODLR, Ltd. became aware of a second breach of the License Agreement by defendant Mulberry. Specifically, by letter dated April 18, 2008 (the "Second Notice of Default"), ODLR, Ltd. advised defendant Mulberry that ODLR, Ltd. had not received the $15,625 minimum royalty payment due on April 1, 2008. The Second Notice of Default further advised defendant Mulberry that if it failed to cure the payment default in the manner required by Section 13.1 of the License Agreement, ODLR, Ltd. "shall have the right to terminate the License Agreement effective immediately upon notice."

23.    Section 13.1.1 of the License Agreement states that if defendant Mulberry failed to make any payment due thereunder, and such default continued uncured for a period of five (5) business days after defendant Mulberry's receipt of written notice of

default, ODLR, Ltd. shall have the right to terminate the License Agreement effective immediately upon written notice.

24.     Upon information and belief, Defendant Mulberry has been marketing and selling goods bearing the O Oscar Mark since the inception of the License Agreement.

25.     Defendant Mulberry failed to pay ODLR, Ltd. the outstanding minimum royalty payment specified in the Second Notice of Default.

26.     By press release dated April 28, 2008, it appeared that PVH finalized and consummated the acquisition of defendant Mulberry.

27.     Accordingly, by letter dated April 28, 2008 (the "Termination Notice"), ODLR, Ltd, advised defendant Mulberry that ODLR, Ltd. was exercising its right to terminate the License Agreement effective immediately based on the breaches set forth in the First Notice of Default and the Second Notice of Default, whether taken together or individually.

28.     Section 14.1 of the License Agreement provides that upon the expiration or termination of the License Agreement:

> all rights in the LICENSED MARK, copyrights created as a result of or further to this Agreement, any of the DESIGN SPECIFICATIONS, patterns and/or designs developed by [ODLR, Ltd.] or [Mulberry].... or for use with the ARTICLES will automatically revert to [ODLR, Ltd.]  [Mulberry] immediately will cease and thereafter refrain from all use of the LICENSED MARK, any trademarks which are similar to the LICENSED MARK and all such DESIGN SPECIFICATIONS, patterns and/or designs. [Mulberry] shall remove all tag and labels bearing the LICENSED MARK from ARTICLES in inventory and otherwise. In addition to the foregoing, at [ODLR, Ltd.'s] request, [Mulberry] shall provide [ODLR, Ltd.] ...information with respect to the sourcing of ARTICLES.

29.     Section 14.2 of the License Agreement further provides that in the event the License Agreement is terminated by ODLR, Ltd. by reason of defendant Mulberry's

default, ODLR, Ltd. shall be entitled to receive immediately all minimum royalty payments due for the remainder of the License Agreement.

30.     As of the date of termination, in addition to the $15,625 owed by defendant Mulberry to ODLR, Ltd. for the past due minimum quarterly royalty payment, defendant Mulberry was obligated to pay ODLR, Ltd. $1,015,625 for the minimum royalty payments owed through the end of the License Agreement as required by Section 14.2 of the License Agreement.

31.     Section 7.3 of the License Agreement also obligated defendant Mulberry to pay ODLR, Ltd. an amount equal to two (2%) percent of Net Sales of the Articles for ODLR, Ltd.'s use in connection with corporate and/or image advertising, with such amounts to be reported and paid to ODLR, Ltd. within thirty (30) days following each quarterly date.

32.     As of the date of termination of the License Agreement, defendant Mulberry was obligated to ODLR, Ltd. in the amount of $3,167.11 for unpaid corporate and image advertising under Section 7.3 that was due for the period ending December 31, 2007, and for amounts owed for the time period January 1, 2008 through the date of termination (such amounts to be determined upon receipt by ODLR, Ltd. from defendant Mulberry of the required sales reports, demand for which was made by ODLR, Ltd. in the Termination Letter.)

33.     In addition to advising defendant Mulberry that the License Agreement was terminated effective immediately, the Termination Letter also requested assurance that defendant Mulberry would comply with its termination obligations, as well as promptly pay ODLR, Ltd. $1,034,417.11.  This amount consisted of the $15,625 for past

8

due royalty payments, $1,015,625 for accelerated royalty payments, and $3,167.11 for the unpaid corporate and image advertising.

34.    Section 14.3 of the License Agreement also provides that within ten (10) days from termination defendant Mulberry must deliver to ODLR, Ltd. a schedule of inventory of Articles and Articles in the process of manufacture then on hand as of the close of business on the date of termination.  Defendant Mulberry failed to provide ODLR, Ltd. with the required inventory list.

35.    To date, defendant Mulberry has failed to cure its defaults and remains in breach of the License Agreement, which ODLR, Ltd. expressly terminated as of April 28, 2008.

36.    Upon information and belief, notwithstanding the foregoing and without permission or authority of ODLR, Ltd., defendant Mulberry has continued to offer, distribute, or sell goods bearing plaintiff's tradenames and trademarks, including the O Oscar Mark.

37.    As contained at the defendants' website, http://www.mulberryneckwear.com/, defendant is still using plaintiff's tradename and trademarks.

## AS AND FOR A FIRST CAUSE OF ACTION FOR TRADEMARK INFRINGMENT

38.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint, as if fully set forth herein.

39.    By reason of the foregoing, commencing no later than April 28, 2008, defendant has infringed and continues to infringe plaintiff's Marks by, upon information

9

and belief, manufacturing, causing to be manufactured, advertising, promoting, offering

for sale and selling, without plainitff's consent, goods bearing plaintiff's Marks.

40.    Defendant's aforesaid conduct and infringement of plaintiff's rights in the

Marks is willful in that defendants knew of plaintiff's Marks, knew of the termination of

the license, and thereafter, upon information and belief, continued to manufacture, cause

to be manufactured, advertise, promote, offer for sale and sell, without plaintiff's consent,

goods bearing plaintiff's Marks.  This use of said infringing names and marks by

defendant is without permission or authority of plaintiff and has been and continues to be

in a manner likely to cause confusion, to cause mistake and to deceive.

41.    The aforesaid continuing acts of defendant infringe plaintiff's United

States marks under Registration Nos. 1334456, 2119455, 2132134, 3307716, 3303388,

and 3283357, all in violation of 15 U.S.C. § 1114(1).

42.    Plaintiff is being irreparably injured by defendant's aforesaid acts and has

no adequate remedy at law for defendants' continued infringement, which will

irreparably injure plaintiff unless defendants are restrained and enjoined from continuing

said acts.

### AS AND FOR A SECOND CAUSE OF ACTION FOR
### FEDERAL UNFAIR COMPETITION

43.    Plaintiff repeats and realleges each and every allegation contained in

paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.    Subsequent to April 28, 2008, defendant has had no license, permission,

consent or authorization from plaintiff to use plaintiff's tradename or trademarks,

including the Marks, in connection with its business or to hold itself out or represent itself

as authorized to sell Oscar de la Renta, Ltd. trademarked goods.

10

45.    Upon information and belief, despite the termination of any and all licenses, permission, consent or authorization by plaintiff, defendant has continued to manufacture, cause to be manufactured, advertise, promote, offer for sale and sell goods bearing plaintiff's Marks and to represent and make it appear that it is authorized to sell goods bearing plaintiff's tradename and trademark, including the Marks, and has made such representations and actual sales to customers or potential customers in this district and elsewhere.

46.    Defendant's continued intentional use of plaintiff's tradename and trademarks, including the Marks, in connection with defendants' business as alleged above, constitutes a use in interstate commerce and a false designation of origin or false and misleading description or representation of goods in commerce, with knowledge of the falsity, which is likely to cause confusion, mistake and deception, and in commercial advertising and promotion, misrepresents the nature, characteristics, qualities and origins of defendants' goods, services and commercial activities, within the meaning of and in violation of 15 U.S.C. § 1125(a). Among other things, defendants' unauthorized use of plaintiff's tradenames and trademarks, including the Marks and continued unauthorized sale of goods bearing plaintiff's tradenames and trademarks, including the Marks, is likely to lead others to the mistaken belief that the business of defendants originates from or is in some way authorized, licensed, associated or related to plaintiff and its business.

47.    Plaintiff has been damaged and, unless defendant is restrained and enjoined, will continue to be damaged by defendants' aforesaid acts.

48.    Plaintiff is being irreparably injured by said unfair competition and has no adequate remedy at law for defendant's continuing unfair competition, and therefore defendants must be restrained and enjoined form continuing said acts.

49.    At all times relevant, defendant has had actual and constructive notice of plaintiff's tradenames and trademarks, including the Marks. Accordingly, the infringing and tortious acts of defendants are intentional, willful and deliberate.

## AS AND FOR A THIRD CAUSE OF ACTION FOR STATE UNFAIR COMPETITION

50.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.    The unlawful conduct of defendant is being continued willfully and has caused actual confusion and is likely to continue to confuse, mislead, and deceive purchasers, members of the public, and others, and create in the mind of the public the false impression that plaintiff is responsible for or affiliated with defendant and its products containing the infringing tradenames and trademarks, including the Marks, all to plaintiff's immediate and irreparable damage as alleged above.

52.    The wrongful conduct of defendant described herein constitutes unfair competition, and if continued will cause irreparable damage to plaintiff, its goodwill and its tradenames, trademarks, and to its business, general reputation, and reputation in the trade. Such conduct by defendant constitutes a violation of the common law of the State of New York.

53.    The aforesaid acts of defendant constitutes inequitable conduct, unfair trade practices, and unfair competition under the common law of New York in that defendant has thereby misappropriated plaintiff's goodwill, development and promotion

12

of its distinctive tradenames and trademarks, and there is a likelihood of confusion among consumers.

54.    Plaintiff has been damaged and, unless defendant is restrained and enjoined, will continue to be damaged by defendants' aforesaid acts.

55.    Plaintiff is being irreparably injured by said unfair competition and has no adequate remedy at law for defendant's continuing unfair competition, and therefore defendant must be restrained and enjoined from continuing said acts.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT

56.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.    Plaintiff has performed all of its obligations under the License Agreement.

58.    As set forth above, defendant Mulberry has materially breached the License Agreement by, inter alia, failing to make the required royalty payments, failing to make the required corporate image and advertising payments, failing to provide the required sales reports, and failing to provide the list of inventory of Articles.

59.    Plaintiff has been damaged by defendant Mulberry's failure to make the royalty payments and to make the corporate image and advertising payments in an amount not less than $1,034,417.11, together with interest, costs and attorneys fees and related expenses.

60.    As set forth above, defendant Mulberry has materially breached the License Agreement by, upon information and belief, continuing to manufacture, causing to be manufactured, advertising, promoting, offering for sale and selling such goods

bearing plaintiff's tradenames and trademarks, including the Marks, after termination of the License Agreement.

61.    Plaintiff has been irreparably injured by defendant Mulberry's continued breach of the License Agreement set forth above, and unless defendant Mulberry is enjoined, will continue to suffer irreparable injury.

WHEREFORE, plaintiff prays for an order and judgment against defendant as follows:

A.    Granting plaintiff preliminary and permanent injunctions enjoining defendant and its subsidiaries and  respective officers, agents, servants, employees, attorneys, and those in active concert or participation with each or any of them who receive actual notice of this order and judgment:

(i)    From any further use of any name or trademark which includes "Oscar de la Renta," "O Oscar," "O Oscar an Oscar de la Renta Company" or "Oscar by Oscar de la Renta;"

(ii)    From using any other mark, word, name or symbol similar to plaintiff's tradenames or trademarks, including the Marks, which is likely to cause confusion, mistake or to deceive;

(iii)    From infringing plaintiff's rights in its aforesaid tradenames and trademarks, including the Marks, or using any colorable imitation thereof;

(iv)    From selling, offering for sale, advertising or distributing any products bearing plaintiff's tradenames or trademarks, including the Marks, or any colorable imitation thereof;

(v)  From unfairly competing with, injuring the business reputation of, or damaging the goodwill of plaintiff, and engaging in unfair competition that in any way injures plaintiff; and

(vi)  From continuing the acts of unfair competition herein complained of.

B.  Requesting defendant to send written notice, approved by the Court, to each manufacturer, retailer, customer or other party who has received infringing goods from defendant Mulberry, with a copy to plaintiff,

(i)  requesting such recipient to return all such materials to said defendant;

(ii)  offering each recipient a full refund of any consideration paid to said defendant for such materials; and

(iii)  advising such recipients of the pendency of this action and that pursuant to an Order of this Court, said defendant has been enjoined during the pendency of this action from utilizing any infringing tradenames or trademarks, including the Marks belonging to plaintiff, and that any use or sale of the infringing goods will be in violation of said order and judgment.

C.  That defendant be required to deliver up, by a date certain, to be impounded during the pendency of this action, all goods, patterns, designs, sketches, materials, fabrics, samples, labels, tags, catalogs and advertisements imprinted with or containing plaintiff's tradenames or trademarks, including the Marks, and all other infringing goods in defendant's possession, custody or control or which can be recalled from the trade, and all matter for making copies of the tradenames or trademarks of plaintiff;

15

D.    Awarding plaintiff all of defendant's profits, if any, and plaintiff's damages by reason of the acts of trademark infringement and unfair competition complained of, said damages to be trebled pursuant to 15 U.S.C. § 1117; and

E.    Awarding plaintiff damages against defendant Mulberry for breach of contract in the amount of not less than $1,034,417.11, together with interest, expenses, including attorneys' fees and related disbursements; and

F.    Awarding plaintiff punitive damages in an amount of not less than Five Million Dollars ($ 5,000,000.00) for defendant's willful, deliberate and continuing infringement of plaintiff's rights continuing after actual and constructive notice of the same; and

G.    Awarding plaintiff its costs and disbursements, reasonable attorneys' fees and such other or further relief as the Court may deem just and proper.

Dated: New York, New York
        May 7, 2008


                            TASHJIAN & PADIAN

                            By:_____
                               Richard G. Tashjian (RT 8065)
                               15 West 36th Street
                               New York, New York 10018
                               (212) 319-9800

                            Attorneys for Plaintiff
                            Oscar de la Renta, Ltd.


16

Exhibit A

Int. Cl.: 25

Prior U.S. Cl.: 39

Reg. No. 1,334,456

## United States Patent and Trademark Office

Registered May 7, 1985

---

## TRADEMARK
### PRINCIPAL REGISTER

## OSCAR DE LA RENTA

OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)
550 SEVENTH AVE.
NEW YORK, NY 10018

FOR: WOMEN'S APPAREL—NAMELY, COATS, BLOUSES, SKIRTS, DRESSES AND SCARVES; AND MEN'S APPAREL-NAMLEY, CONSTRUCTED SUITS, LEISURE SUITS, SCARVES, SHIRTS, SHORTS, TIES, TOP COATS, OVERCOATS, GLOVES, HATS AND UNDERWEAR , IN CLASS 25 (U.S. CL. 39).

FIRST USE 4-0-1965; IN COMMERCE 5-0-1965.

THE NAME "OSCAR DE LA RENTA" IN-DENTIFIES A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

SER. NO. 492,796, FILED 8–1–1984.

CRAIG K. MORRIS, EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 2,119,455

Registered Dec. 9, 1997

## TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)
550 SEVENTH AVENUE
NEW YORK, NY 10018

FOR: WOMEN'S CLOTHING INCLUDING EVENING DRESSES, DRESSES, SKIRTS, SHIRTS, BLOUSES, CAPS, ROBES, BELTS, PANTY HOSE, UNDERSHIRTS, SCARVES, SHOES, UNDERWEAR, WARM-UP SUITS, BODY SUITS, T-SHIRTS, SWEATSHIRTS, SWEAT PANTS, SWEAT SUITS, SWEAT SHORTS, JOGGING SUITS, SWIMWEAR, JEANS, LEGGINGS, SOCKS, LINGERIE AND COORDINATED AND RELATED OUTER-WEAR, NAMELY, COATS, JACKETS, BLAZERS, VESTS, SWEATERS AND RAINJACKETS; MEN'S APPAREL INCLUDING CONSTRUCT-ED SUITS, SCARVES, SHIRTS, SHORTS, TIES, GLOVES, HATS, UNDERWEAR, SHOES, WARM-UP SUITS, BODY SUITS, T-SHIRTS, SWEAT SHIRTS, SWEAT PANTS, SWEAT-SUITS, SWEAT SHORTS, JOGGING SUITS, SWIMWEAR, JEANS, SOCKS, CAPS, ROBES, BELTS, UNDERSHIRTS AND OUTERWEAR, NAMELY, COATS, JACKETS, BLAZERS, VESTS, SWEATERS AND RAINJACKETS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 5-0-1965; IN COMMERCE 5-0-1965.

OWNER OF U.S. REG. NOS. 1,334,456 AND 1,665,110.

THE NAME SHOWN IN THE MARK IDENTI-FIES A LIVING INDIVIDUAL WHOSE CON-SENT IS OF RECORD.

SER. NO. 75-178,649, FILED 10-8-1996.

ELIZABETH A. DUNN, EXAMINING ATTOR-NEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 2,132,134

Registered Jan. 27, 1998

## TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)
550 SEVENTH AVENUE
NEW YORK, NY 10018

FOR: WOMEN'S SPORTSWEAR CONSISTING OF KNIT AND WOVEN TOPS, INCLUDING TEE-SHIRTS, FLEECE SHIRTS AND BLOUSES, FLEECE PANTS, SLACKS, JEANS AND RELATED JEANSWEAR, NAMELY, TOPS AND BOTTOMS MADE OF DENIM FABRIC, SKIRTS, SHORTS, LEGGING FOR CASUAL WEAR, COORDINATED AND RELATED OUTERWEAR, NAMELY, RAINCOATS, JACKETS, COATS; KNITS, NAMELY, TOPS, BOTTOMS, AND DRESSES, COATS, SWEATERS, SUITS, DRESSES, BLAZERS, JACKETS AND VESTS, LINGERIE, AND SCARVES; MEN'S SPORTSWEAR CONSISTING OF JACKETS, BLAZERS, PANTS, BUTTON DOWN SHIRTS, BANDED COLLAR SHIRTS, VESTS, TIES, BELTS, KNITS, RAIN JACKETS, SOCKS, OUTERWEAR, SWEATERS, SWIM TRUNKS, SHORTS, BAGS, CAPS, SHOES AND DENIM, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 7-1-1996; IN COMMERCE 7-1-1996.

OWNER OF U.S. REG. NOS. 1,334,456, 1,665,110 AND OTHERS.

"OSCAR DE LA RENTA" IS THE NAME OF A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

SER. NO. 75-188,107, FILED 10-28-1996.

ELIZABETH A. DUNN, EXAMINING ATTORNEY

Int. Cl.: 18

Prior U.S. Cls.: 1, 2, 3, 22, and 41

United States Patent and Trademark Office

Reg. No. 3,307,716
Registered Oct. 9, 2007

## TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)
550 SEVENTH AVENUE
NEW YORK, NY 10018

FOR: HANDBAGS, TOTES, WALLETS, COIN PURSES, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 12-0-2004; IN COMMERCE 7-0-2006.

OWNER OF U.S. REG. NOS. 922,367, 2,553,215, AND OTHERS.

THE NAME OSCAR DE LA RENTA IDENTIFIES A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

THE MARK COMPRISES A DESIGN SIMULA-TIVE OF A SCRIPT LETTER"O" ABOVE THE WORD "OSCAR" ON A SQUARE BACKGROUND CO-LORED RED.

SN 76-505,716, FILED 4-11-2003.

INGA ERVIN, EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

Reg. No. 3,303,388

## United States Patent and Trademark Office

Registered Oct. 2, 2007

### TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)

550 SEVENTH AVENUE

NEW YORK, NY 10018

FOR: WOMEN'S CLOTHING , NAMELY, BLOU-SES, SHIRTS AND T-SHIRTS, SWEAT SHIRTS, TOPS, HALTER TOPS AND TANK TOPS, FLEECE PULL-OVERS, PANTS, SWEAT PANTS, SLACKS AND JEANS, SKIRTS, SHORTS, LEGGINGS, COATS, SWEATERS, SUITS, DRESSES, BLAZERS, JACKETS, LEATHER JACKETS AND DENIM JACKETS, VESTS, LINGERIE, BRAS, PANTIES, CAMISOLES, SHOES, SCARVES, SWIMWEAR AND COVERUPS, SLEEPWEAR, ROBES, NIGHTGOWNS, NIGHT SHIRTS, PAJAMAS, SLEEP SHIRTS, LOUNGE-WEAR; MEN'S CLOTHING, NAMELY JACKETS, BLAZERS, PANTS, SHIRTS, VESTS, TIES, BELTS, RAIN JACKETS, SOCKS, SWEATERS, SWIM TRUNKS, SHORTS, CAP, SHOES, SWIMWEAR; CHILDREN'S AND INFANT CLOTHING, NAMELY, SHIRTS, AND T-SHIRTS, PANTS, JEANS, SKIRTS, SHORTS, LEGGINGS, COATS, JACKETS AND SWIMWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 7-0-2004; IN COMMERCE 3-0-2005.

OWNER OF U.S. REG. NOS. 922,367, 2,553,215, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPANY", APART FROM THE MARK AS SHOWN.

THE NAME "OSCAR DE LA RENTA" IDENTIFIES A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

THE COLOR(S) RED AND WHITE IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE COLOR OF THE BACKGROUND IS RED AND THE COLOR OF THE LETTERS IN THE MARK IS WHITE.

THE DESIGN PORTION OF THE MARK CON-SISTS OF A STYLIZED DEPICTION OF THE LET-TER "O".

SN 78-358,201, FILED 1-27-2004.

DAVID HOFFMAN, EXAMINING ATTORNEY

Int. Cl.: 24

Prior U.S. Cls.: 42 and 50

## United States Patent and Trademark Office

Reg. No. 3,283,357

Registered Aug. 21, 2007

## TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)
550 SEVENTH AVENUE
NEW YORK, NY 10018

FOR: BED SPREADS, QUILTS, DUVETS, PILLOW CASES, SHAMS, BED SKIRTS, BED SHEETS, BED LINENS, BED PADS, BED BLANKETS, BLANKET THROWS, COMFORTERS, CUSHION COVERS, DRAPERIES, TABLE LINENS; TABLE LINENS, NAMELY, TABLE CLOTHS, PLACEMATS, NAPKINS, RUNNERS AND UNFITTED FABRIC COVERS, IN CLASS 24 (U.S. CLS. 42 AND 50).

FIRST USE 5-0-2003; IN COMMERCE 5-0-2004.

OWNER OF U.S. REG. NOS. 922,367, 2,553,215, AND OTHERS.

THE NAME "OSCAR DE LA RENTA" IDENTIFIES A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

SN 76-573,195, FILED 1-23-2004.

KELLY MCCOY, EXAMINING ATTORNEY