# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

Nº 08 Civ. 4341 (RJS)

_____

## OSCAR DE LA RENTA, LTD.,

Plaintiff,

VERSUS

## MULBERRY THAI SILKS, INC. d/b/a MULBERRY NECKWEAR,

Defendant.

_____

MEMORANDUM AND ORDER
April 17, 2009

_____

RICHARD J. SULLIVAN, District Judge:

Plaintiff Oscar de la Renta, Ltd. ("ODLR") brings this action alleging claims for trademark infringement and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as state law claims for unfair competition and breach of contract, against Defendant Mulberry Thai Silks, Inc. ("Mulberry").

Specifically, ODLR alleges that, by failing to pay agreed-upon royalties, Mulberry breached a license agreement (the "License Agreement") for use of ODLR's trademark. ODLR further alleges that Mulberry continued using the trademark following ODLR's termination of the License

Agreement. (Compl. ¶¶ 39, 44-45, 51-53, 57-58.) ODLR seeks injunctive relief as well as liquidated damages for Mulberry's breach of the License Agreement, treble damages based on Mulberry's profits from the sale of infringing items, punitive damages, and attorney's fees. (*Id.* ¶¶ A-G.)

Before the Court is ODLR's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on its breach of contract claim. Mulberry requests that the Court deny the motion as premature, or in the alternative requests, pursuant to Rule 56(f), to be permitted sixty days to conduct

additional discovery before the Court resolves ODLR's motion for summary judgment.

For the reasons set forth below, Mulberry's request for discovery is denied, ODLR's motion is granted, and the Court awards ODLR damages in the sum of $1,034,417.11.

## I. BACKGROUND

### A. Facts

The following facts are taken from the pleadings, the Local Rule 56.1 statements submitted by the parties, and the affidavits and exhibits submitted in connection with this motion. Where only one party's Rule 56.1 statement is cited, the opposing parties do not dispute that fact or have offered no admissible evidence to controvert that fact. Citations to additional facts in the Discussion section follow the same conventions.

ODLR is a New York company engaged in the business of designing clothing and accessories for both men and women. (Pl.'s 56.1[1] ¶¶ 1, 4.) Mulberry is a California company that, prior to the acquisition of certain of its assets by the Phillips Van Heusen Company ("PVHC"), was engaged in the manufacture and distribution of men's neckwear. (*Id.* ¶¶ 3, 5.)

On April 16, 2007, ODLR and Mulberry entered into the License Agreement. (*Id.* ¶ 6.) The License Agreement granted Mulberry the exclusive right over a term of five years, beginning at execution and terminating December 31, 2012, to use ODLR's "O

---

[1] The Court will refer to ODLR's Statement of Undisputed Facts as "Pl.'s 56.1," and Mulberry's Statement of Undisputed Facts as "Def.'s 56.1."

Oscar" trademark for the manufacture and distribution of men's neckwear. (*Id.* ¶¶ 9, 11; *see also* Affidavit of Alexander L. Bolen ("Bolen Aff.") Ex. B, License Agmt. ¶ 3.1.) The License Agreement provided that it could "not be assigned, sold or transferred voluntarily or by operation of law by the LICENSEE, or its shareholders." (Bolen Aff. Ex. B, License Agmt. ¶ 13.3.1; *see also id.* ¶ 2.1.) The License Agreement further provided for quarterly royalty payments of 8% of Mulberry's net sales of items produced under the License Agreement, with guaranteed minimum quarterly royalty payments by Mulberry to ODLR in amounts that escalated over the life of the contract: $15,625 quarterly in the first year of the contract, $43,750 quarterly in the second, $56,250 quarterly in the third, $68,750 in the fourth, and $81,250 in the fifth. (*Id.* ¶¶ 8.2.1-8.2.5.) Failure to make a required payment constituted a default under the License Agreement. (*Id.* ¶¶ 8.1, 13.1.1.) ODLR retained the right to terminate the License Agreement should Mulberry fail to make a payment due under the terms of the agreement and should such failure remain uncured five days from Mulberry's receipt of written notification of the default. (*Id.* ¶¶ 8.3, 13.1.1.) In addition, the License Agreement contained a provision stating that:

> In the event this Agreement is terminated by LICENSOR . . . prior to the expiration of the TERM by reason of LICENSEE's default hereunder . . . LICENSOR shall be entitled to retain all minimum royalties previously paid, to collect and retain all minimum royalties due as of the date of such termination, and, to receive immediately all minimum royalty installments . . . that are due and payable for the remaining TERM of this Agreement . . . . The parties agree

that the amounts so payable are as unmitigable liquidated damages; [sic] not as a penalty.

(*Id.* ¶ 14.2.)

Following the execution of the License Agreement, Mulberry commenced production of neckwear using the "O Oscar" trademark. (Pl.'s 56.1 ¶ 10.) Mulberry made the first two payments due under the terms of the License Agreement. (*Id.* ¶ 20.) Mulberry made no payment on April 1, 2008. (*Id.* ¶ 23; Def.'s 56.1 ¶ 23.)

By letter dated April 18, 2008, ODLR advised Mulberry that it had not received a royalty payment on April 1, 2008, and that a default under Section 13.1 of the License Agreement entitled ODLR to terminate the agreement immediately. (Pl.'s 56.1 ¶ 24; Def.'s 56.1 ¶ 24.) Mulberry received the April 18, 2008 letter, but made no payment to ODLR. (Pl.'s 56.1 ¶¶ 26-27; Def.'s 56.1 ¶¶ 26-27.) By letter dated April 28, 2008, ODLR terminated the License Agreement. (Pl.'s 56.1 ¶ 28; Def.'s 56.1 ¶ 28.)

B. Procedural History

ODLR filed its complaint in the above-captioned action on May 8, 2008, alleging, *inter alia*, breach of contract, and claiming damages, pursuant to the License Agreement's liquidated damages provision, in the amount of the past-due and future minimum royalties. Mulberry filed its answer on June 18, 2008. The instant motion was filed November 3, 2008, and was fully submitted on December 8, 2008.

II. DISCUSSION

A cause of action for breach of contract under New York law[2] "requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)).

The parties do not dispute that they entered into a valid contract or that the parties began performance under the License Agreement. (Pl.'s 56.1 ¶¶ 6, 10; Def.'s 56.1 ¶¶ 6, 10.) It is similarly undisputed that Mulberry neither made a royalty payment on April 1, 2008 nor made a payment once ODLR notified Mulberry of its default under the terms of the License Agreement. (Pl.'s 56.1 ¶¶ 23-27; Def.'s 56.1 ¶ 23-27.)

ODLR moves for summary judgment on its breach of contract claim on the grounds that, in light of these undisputed facts, it has established a *prima facie* claim for breach of contract and that Mulberry's defenses are precluded as a matter of law. (Pl.'s Mem. at 4-5.) ODLR further argues that, because the License Agreement provides for liquidated damages in the amount of any past-due amounts owing under the License Agreement as well as all minimum royalties for the

[2] The Court applies New York law both because the Agreement contains a New York choice of law provision (*see* Bolen Aff. Ex. B ¶ 26), and because both parties have relied upon New York law in their briefs. *See Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." (internal citations and quotations omitted)).

remainder of the term of the License Agreement, it is entitled to damages in the amount of $1,034,417.11.  (*Id.* at 2.)

Mulberry asserts that summary judgment is premature at this time, as there remain numerous facts in dispute that impact both its potential liability on the breach of contract claim as well as what, if any, is the appropriate amount of damages.  (Def.'s Opp'n at 3.)  Mulberry first argues that discovery will show that ODLR violated the implied contractual covenant of good faith and fair dealing by refusing to allow Mulberry to assign the License to PVHC, thus itself breaching the contract.  (*Id.* at 6-8.)  Specifically, as the men's neckwear market deteriorated in late 2007, Mulberry faced bankruptcy and was compelled to sell substantially all of its assets to PVHC.  (*Id.* at 3-4.)  Mulberry claims that ODLR refused Mulberry permission to assign the License to PVHC in order to collect the contractual royalties and "cash out" of the neckwear market, in violation of the implied covenant of good faith and fair dealing inherent in every contract.  (*Id.* at 4-5.)  If ODLR violated the implied covenant, Mulberry argues, then ODLR has violated the License Agreement, thus vitiating ODLR's own performance under the contract.  (*Id.* at 8.)  Mulberry further asserts that the liquidated damages provision of the License is an unenforceable penalty, that discovery will show that the actual damages suffered by ODLR, if any, on its breach of contract claim are much less than those claimed, that ODLR has failed to mitigate its damages, and that ODLR impermissibly seeks to recover damages from Mulberry while potentially re-licensing the O Oscar trademark to another licensee.  (*Id.* at 8-11.)

Accordingly, Mulberry argues, ODLR's summary judgment motion should be denied as premature, or stayed to allow discovery pertaining to ODLR's alleged violation of the implied covenant of good faith and fair dealing as well as damages.  (*Id.* at 6.)

A. Standard of Review

The standard for summary judgment is well established.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008).  The moving party bears the burden of showing that he or she is entitled to summary judgment.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

While Rule 56 provides that the party seeking relief in the action may move for summary judgment once twenty days have passed since the commencement of the action, *see* Fed. R. Civ. P. 56(a)(1), a grant of summary judgment is nonetheless disfavored

4

where the party opposing the motion has not yet had an opportunity for discovery, *see, e.g.*, *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (noting that "only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery" (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000))). Accordingly, Rule 56(f) provides that upon a proper showing the Court may stay consideration of a motion for summary judgment so that the non-moving party may have the opportunity to conduct discovery. Fed. R. Civ. P. 56(f).

Under Rule 56(f), "a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (internal citations and quotations omitted).

Applying the above standards, the Court finds that Mulberry is not entitled to discovery, and that summary judgment on ODLR's claim for breach of contract is appropriate.

B. Entitlement to Discovery

Here, Mulberry has satisfied three of the four prongs of the test set forth in *Miller*. First, it has described the facts sought to defeat the motion: Mulberry has submitted with its opposition to the instant motion the Declaration of Henry Jacobson ("Jacobson Declaration"), Mulberry's chief executive officer, setting forth his belief that deposition of ODLR's executives and discovery of ODLR's records will show that ODLR intended to take "unfair advantage" of Mulberry's pending sale to PVHC by terminating the License Agreement and collecting the accelerated royalties due under the liquidated damages provision, and may even show that ODLR is seeking to double-collect by re-licensing the "O Oscar" trademark while collecting the liquidated damages from Mulberry.  (Jacobson Decl. ¶ 10.)  Mulberry has also submitted the Declaration of Matthew A. Stratton ("Stratton Decl."), counsel for Mulberry, describing his belief that further discovery "will show ODLR acted in bad faith when performing the license agreement, possibly invalidating ODLR's breach of contract claim," and that this belief may be borne out by "internal ODLR communications or memoranda showing that ODLR never intended to continue marketing its neckwear line in the face of a deteriorating neckwear market." (Stratton Decl. ¶ 8.)  Stratton further declares that discovery into ODLR's finances and invoices will show that there is a "gross disproportion" between ODLR's actual damages and the damages due under the liquidated damages clause. (*Id.* ¶ 9.) Finally, Stratton declares that further discovery will show that ODLR failed to mitigate damages, that such failure will be shown by "internal ODLR's internal memoranda or communications that discouraged the finding of a replacement licensee," and that further discovery may reveal that ODLR is searching for a new licensee so that it may, in essence, benefit from duplicative recovery. (*Id.* ¶ 10.)

Mulberry has also described the efforts it made to obtain the discovery described above and the reasons it was unable to do so: Mulberry details the various discovery requests it has made to ODLR pertaining to Mulberry's alleged breach, ODLR's refusal to approve assignment of the rights created by the License Agreement to PVHC, and actual losses suffered by ODLR as a result of the breach, as well as ODLR's objections to those requests. (Stratton Decl. ¶¶ 3-7; *see also id.* Exs. A-D.)

It is the remaining requirement set forth in *Miller*, however, that proves fatal to Mulberry's request for discovery. In order to demonstrate an entitlement to discovery under Rule 56(f), the party seeking discovery must make a showing that the discovery sought can "reasonably [be] expected to create a genuine issue of material fact." *Miller*, 321 F.3d at 303 (internal quotations and citations omitted). Thus, "[a]lthough pre-discovery summary judgment is rare, a Rule 56(f) request should be denied where additional discovery will not uncover a genuine issue of material fact." *XL Specialty Ins. Co. v. Agoglia*, Nos. 08 Civ. 3821 (GEL), 08 Civ. 4196 (GEL), 08 Civ. 5252 (GEL), 2009 WL 513747, at *14 (S.D.N.Y. Mar. 2, 2009). For the reasons discussed more fully in Section C, *infra*, the discovery requested by Mulberry cannot reasonably be expected to create a genuine issue of material fact. Accordingly, Mulberry is not entitled to additional discovery pursuant to Rule 56(f) in order to oppose the instant motion.

## C.  Summary Judgment

### 1.  Breach of Contract

As noted above, Mulberry argues that, as a result of ODLR's violation of the implied covenant of good faith and fair dealing, ODLR cannot establish that it performed under the contract, and thus its motion for summary judgment must be denied.

#### i.  Applicable Law

It is well settled that "[u]nder New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007). This implied covenant "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir. 1989) (internal quotations and citations omitted). Accordingly, the duty of good faith and fair dealing is violated "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under the agreement." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990).

Significantly, although this implied covenant bars actions not "expressly forbidden" by the contract but undertaken in bad faith, it does *not* "operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express,

explicitly bargained-for benefits." *Id.* (internal citations and quotations omitted). Accordingly, "no obligation can be implied that would be inconsistent with other terms of the contractual relationship." *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 394-95 (2d Cir. 2002) (internal citations and quotations omitted); *see also Higgs v. Columbia Univ.*, No. 05 Civ. 2642 (DF), 2009 WL 77880, at *12 (S.D.N.Y. Jan. 6, 2009) (holding that "the implied covenant of good faith and fair dealing cannot be used to add to a party's substantive obligations or to contradict express terms of the agreement"); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998) (holding that the implied covenant of good faith and fair dealing "cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract").

### ii.  Analysis

Here, the express terms of the License Agreement provide that the rights created thereunder "may not be assigned, sold or transferred voluntarily or by operation of law by the LICENSEE, or its shareholders." (License Agmt. ¶ 13.3.1; *see also id.* ¶ 2.1.) Assignment was neither contemplated nor bargained for by the parties — indeed, ODLR bargained for the *non*-assignability of the rights it granted Mulberry.  To create an obligation, based on the implied covenant of good faith and fair dealing, on ODLR's part to permit the assignment of the License would deprive ODLR of the benefit of its bargain, and would contravene the express terms of the License Agreement.  In light of the express terms of the License Agreement to the

contrary, the Court holds that the implied covenant of good faith and fair dealing did not require ODLR to permit the assignment of the License.  *See Times Mirror Magazines*, 294 F.3d at 395.  Accordingly, summary judgment in favor of ODLR on the breach of contract claim is appropriate.

### 2.  Damages

Mulberry alleges that the License Agreement's liquidated damages clause is a penalty, and that disputed issues of fact remain as to what damages, if any, ODLR actually suffered and what efforts ODLR made to mitigate its damages.

### i.  Applicable Law

Under New York law, "[w]hether a clause represents an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances." *Bates Adver. USA, Inc. v. 498 Seventh, LLC*, 7 N.Y.3d 115, 120 (N.Y. 2006) (internal citations and quotations omitted).

Generally, a "liquidated damages clause . . . will be upheld by a court, unless the liquidated amount is a penalty because it is plainly or grossly disproportionate to the probable loss anticipated when the contract was executed." *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 413 (S.D.N.Y. 2004).  The party challenging the liquidated damages provision "must demonstrate either that damages flowing from a prospective [breach] were readily ascertainable at the time [the parties] entered into their [contract], or that the [liquidated damages are]

conspicuously disproportionate to these foreseeable losses." *JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 380 (N.Y. 2005). Factors to be considered in the analysis include "whether the parties were sophisticated and represented by counsel, the contract was negotiated at arms-length between parties of equal bargaining power, and . . . that [the provision] was freely contracted to." *The Edward Andrews Group, Inc. v. Addressing Servs. Co., Inc.*, No. 04 Civ. 6731 (LTS) (AJP), 2005 WL 3215190, at *6 n.3 (S.D.N.Y. Nov. 30, 2005) (alteration in original) (internal citations and quotations omitted).

### ii. Analysis

The License Agreement provided for quarterly royalty payments of 8% of Mulberry's net sales; it also provided for guaranteed minimum royalties, payable on a quarterly basis, to which ODLR was entitled regardless of Mulberry's actual net sales. (License Agmt. ¶¶ 8.1-8.2.) The amount due in liquidated damages is simply the sum of the minimum royalties due under the contract for the unexpired term of the contract at the time of the breach, as well as any royalty monies then due and owing. (*Id.* ¶ 14.2.) The liquidated damages thus represent the *minimum* amount ODLR stood to gain from the performance of the remainder of the contract — hardly an unreasonable or disproportionate estimate of the probable loss caused by a breach of the License Agreement. *See Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167, 170-71 (S.D.N.Y. 1990). Further, the amount of damages caused by a breach — 8% of a presumably varying, then-undefined amount — were inherently uncertain at the time of contracting. The inclusion by the

parties of a minimum guaranteed royalty payment supports this conclusion. Further, both parties were represented by counsel during the negotiation of the License Agreement. (Pl.'s 56.1 ¶ 8.) Mulberry has not argued that the negotiation of the contract was not arms length or that Mulberry was too unsophisticated to understand the import of the liquidated damages clause. Accordingly, Mulberry has failed to meet its burden of showing that the liquidated damages provision is an unenforceable penalty clause.

Mulberry's argument that there exist genuine issues of material fact as to damages because, even if the liquidated damages clause is valid, there must be a determination of what, if any, efforts ODLR made to mitigate its damages, is without merit. Under New York law, "[w]here the court has sustained a liquidated damages clause the measure of damages for a breach will be the sum in the clause, no more, no less." *JMD Holding*, 4 N.Y.3d at 379 (internal citations and quotations omitted) (alteration in original). Accordingly, "once liquidated damages are awarded pursuant to a valid contract provision, the plaintiff need not make efforts to mitigate those damages and subtract the mitigation from the liquidated damages award." *Wells Fargo Bank NW, N.A. v. Taca Int'l Airlines, S.A.*, 315 F. Supp. 2d 347, 351 n.3 (S.D.N.Y. 2003); *see also Crown It Servs.., Inc. v. Koval-Olsen*, 782 N.Y.S.2d 708, 712 (1st Dep't 2004) (noting that "where a contract contains a valid liquidated damages clause, mitigation is irrelevant"); *Delvecchio v. Bayside Chrysler Plymouth Jeep Eagle, Inc.*, 706 N.Y.S.2d 724, 727 (2d Dep't 2000) (holding that "[m]itigation of damages is not

relevant when there is a valid liquidated damages clause").[3]

Mulberry has failed to point to a genuine issue of material fact as to its breach of the Licensing Agreement or the damages flowing therefrom. Accordingly, partial summary judgment for ODLR is appropriate.

### III. CONCLUSION

For the foregoing reasons, ODLR's motion for partial summary judgment on its breach of contract claim is granted, and ODLR is awarded damages in the sum of $1,034,417.11.

The Clerk of the Court is directed to terminate the motion docketed as Document No. 17.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: April 17, 2009
New York, New York

\*\*\*

Plaintiff Oscar de la Renta, Ltd. is represented by Richard Tashjian, Bradley M. Rank, and Howard Raber, Tashjian & Padian, 15 West

36th Street, 15th Floor, New York, New York 10018. Defendant Mulberry Thai Silks, Inc. is represented by Joseph E. Peterson and Robert Potter, Kilpatrick Stockton LLP, 31 West 52nd Street, 14th Floor, New York, New York 10019, and Lawrence J. Siskind and Matthew A. Stratton, Harvey Siskind LLP, Four Embarcadero Center, 39th Floor, San Francisco, California 94111.

---

[3] The Court notes in passing that the liquidated damages clause provides that the amounts payable under it are payable "as unmitigable liquidated damages." (License Agmt. ¶ 14.2.)